IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ANGEL L. F.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CV 25-113-M-KLD<br><br>ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 et seq.

## I. Procedural Background

Plaintiff protectively filed an application for Title II benefits on December 15, 2021, and an application for Title XVI benefits on February 1, 2022, alleging disability beginning on December 3, 2021 (Tr. 360-64, 377-87).[1] Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative

[1] Citations to the certified administrative record filed by the Commissioner (Doc. 7) are designated as "Tr." and refer to the Bates-stamped page numbers assigned by the Social Security Administration rather than the page numbers assigned by the Court's electronic docketing system.

hearing. (Tr. 18-39, 40-63, 202-11, 226-33). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated May 23, 2024, the agency's final decision for purposes of judicial review. (Tr. 5-10). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II. Legal Standards

### A. Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an

ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

**B. Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); *see also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). When evaluating the severity of a claimant's mental impairments at step two, the ALJ must consider four broad functional areas, known as the "paragraph B" criteria: (i) understanding, remembering, and applying information; (ii) interacting with others; (iii) concentrating, persisting, and maintaining pace; and (iv) adapting or managing oneself." 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(c)(3). The ALJ is required to rate the claimant's degree of limitation in these areas using a five-point scale: none, mild, moderate, extreme, or extreme. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4). If the claimant has no more than mild limitations in the "paragraph B" criteria and the evidence does not otherwise indicate there is more than a minimal limitation in the claimant's ability to do basic work activities, the ALJ will generally find that the claimant's mental impairments are not severe. 20 C.F.R. §§ 404.1520a(d) and 416.920a(d)(1). By definition, a non-severe impairment is one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922.

If the ALJ finds that the claimant does have one or more severe physical or mental impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual

functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III. Discussion

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured requirement of the Social Security Act through March 31, 2022, and did not engage in substantial gainful activity after her alleged onset date of December 3, 2021. (Tr. 24). At step two, the ALJ found that Plaintiff had the following severe physical impairments: pseudotumor cerebri, cerebrovascular accident (stroke), epilepsy, fibromyalgia, and degenerative disc disease of the lumbar spine. (Tr. 24). The ALJ also found that Plaintiff had medically determinable mental impairments of depressive disorder, anxiety disorder, and a neurocognitive disorder, but determined the impairments were not severe because, considered singly and in combination, they did "not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (Tr. 25).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any

impairment described in the Listing of Impairments 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 26).

The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform a range sedentary with several physical limitations but no mental limitations. Specifically, the ALJ found that Plaintiff could perform sedentary work with the following physical limitations:

> The claimant was able to occasionally lift and/or carry ten pounds. The claimant can stand and/or walk for two hours, and sit for about six hours. She should avoid work on ladders, ropes, or scaffolds. She would be able to occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. She would be able to tolerate occasional work in extreme cold, heat, or high wetness. The claimant would be able to work in an environment with moderate noise, the claimant could occasionally use vibrating tools. She should avoid work in a closed environment with concentrated pulmonary irritants such as fumes, odors, dusk, and gases. She should avoid work at unprotected heights and should also avoid commercial driving.

(Tr. 27). At step four, the ALJ found that Plaintiff was capable of performing past relevant work as an appointment clerk. (Tr. 32). Having determined that Plaintiff could perform past relevant work, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff does not challenge the ALJ's evaluation of her physical impairments and limitations. Plaintiff also does not argue that the ALJ erred in evaluating her subjective symptom testimony. Focusing instead on her mental impairments, Plaintiff contends the ALJ failed to properly evaluate the mental-

health medical opinion evidence and failed to address mild mental limitations in the RFC analysis.

**A. Medical Opinion Evidence**

The ALJ is required to consider all medical opinions and prior administrative medical findings and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). A medical opinion is defined as a "statement from a medical source about what [a claimant] can do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations" in the ability to perform the physical and mental demands of work. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The factors that the ALJ must consider when evaluating a medical opinion include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

1. <u>Prior Administrative Findings</u>

Plaintiff argues the ALJ failed to properly evaluate the prior administrative findings of Dr. Debra Sheppard and Dr. Mark Berkowitz, the psychological state agency consultants at the initial and reconsideration levels, respectively. (Tr. 30-31, citing Tr. 132-144, 147-160, 161-170, 172-181). Dr. Sheppard and Dr.

Berkowitz both found that Plaintiff had no more than mild mental limitations in any of the paragraph B functional areas and concluded that her mental impairments were not severe. (Tr. 136, 151, 165, 175). The ALJ found that both opinions were supported by the record and considered them persuasive. (Tr. 30).

As to Dr Sheppard, the ALJ noted that she supported her opinion with specific references to the medical record, including recent examination findings by Plaintiff's primary care provider indicating that Plaintiff denied mood changes and was seen as fully oriented and cooperative. (Tr. 30, 137). The ALJ found that Dr. Sheppards's opinion was consistent with evidence of Plaintiff's stable examination findings, and reflected that Plaintiff could understand, remember, and carry out simple instructions, was independent in her activities of daily living, had a good memory, had normal concentration, and got along well with examiners. (Tr. 31, 137).

As to Dr. Berkowitz, the ALJ noted that he supported his opinion with specific references to the medical record, including Plaintiff's lack of severe psychiatric signs or symptoms secondary to or in conjunction with physical impairments. (Tr. 31, 166). The ALJ also noted that Dr. Berkowitz saw no evidence of a substantial change in Plaintiff's mental conditions that supported any worsening during the period under review and found that his opinion was consistent with evidence that Plaintiff had a normal memory and could perform

simple instructions. (Tr. 30, 166). The ALJ found that Plaintiff's limited mental health complaints and normal mood and affect were consistent with finding any mental impairments non-severe. (Tr. 30, 743).

Plaintiff argues the ALJ's consistency analysis is not supported by substantial evidence because it does not address mental health records from Circle Therapeutics, specifically, an initial assessment dated August 18, 2022 (Tr. 1038-72) and a readmission assessment dated January 15, 2024 (Tr. 1296-1313). Plaintiff argues the ALJ's supportability analysis is also flawed because Dr. Sheppard and Dr. Berkowitz rendered their opinions in February and August 2023, respectively— several months before the readmission assessment by Circle Therapeutics—such that their opinions were not based on a complete case record. (Doc. 9 at 12).

Although the ALJ did not specifically address the January 2024 readmission assessment when evaluating Dr. Sheppard's and Dr. Berkowitz's opinions, the ALJ did refer briefly to the assessment, and the fact that Plaintiff was apparently capable of researching new epilepsy treatment options, as part of her step two analysis in finding that Plaintiff had no limitations in concentration, persistence or pace. (Tr. 25-26). Plaintiff is correct, however, that the ALJ did not further address the Circle Therapeutics readmission assessment or discuss the initial assessment when evaluating Dr. Sheppard's and Dr. Berkowitz's opinions.

Plaintiff argues the initial and readmission assessments reflect that she has significant difficulty with interpersonal relationships that, if properly considered, would warrant limitations in the RFC in interacting with others. Plaintiff points specifically to portions of the August 2022 initial assessment reflecting that she reported: an estranged relationship with her son; verbally threatened to “get” the therapist if the therapist wronged her in some way; having had five brief marriages that ended in divorce; having superficial and meaningless social relationships; and being a sexual addict with multiple partners over the years. (Doc. 9 at 8, citing Tr. 1039, 1040-41). The initial assessment primarily documents Plaintiff’s reported social history and relationships but does not identify any mental functional limitations. Both Dr. Sheppard and Dr. Berkowitz reviewed and considered the initial assessment in finding that Plaintiff’s mental impairments were not severe. (Tr. 133, 148 163, 173).

Plaintiff also points to portions of the January 2024 readmission assessment reflecting that her therapist had observed bouts of anger and incongruent emotion as well as restricted affect, considered Plaintiff’s relationship with her daughter over-enmeshed, and considered her relationship with her husband co-dependent. (Doc. 9 at 8, citing Tr. 196-97). But like the initial assessment, the readmission assessment mainly describes Plaintiff’s relationships, and while it describes Plaintiff as sometimes being angry, it does not identify any specific functional

limitations. *See David B. v. Saul*, 2019 WL 6118263, at *9 (E.D. Wash. Nov. 18, 2019) (finding the ALJ did not err in failing to credit mental health counseling treatment records where the notes represented how the plaintiff felt on a particular day and provided vague conclusions, such as the plaintiff appearing depressed, but did not refer to objective medical findings or set forth any specific functional limitations). Although the readmission assessment post-dated the state agency physicians' review, "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F.App'x 421, 423 (9th Cir. 2020). Plaintiff does not point to evidence reflecting any change or deterioration in her mental health between the time Dr. Berkowitz reviewed the record on reconsideration in August 2023 and time of the readmission assessment approximately five months later. Consistent with the prior administrative findings by Dr. Sheppard and Dr. Berkowitz, Plaintiff's hearing testimony focused almost exclusively on her physical limitations and Plaintiff did not testify to having any difficulty with social interaction. (Tr. 46-59). The ALJ properly relied on the prior administrative findings of Dr. Sheppard and Dr. Berkowitz in evaluating Plaintiff's residual functional capacity.

2. Consultative Psychological Examination

Plaintiff argues the ALJ failed to properly evaluate the opinion of Dr. Katrina Evans, who conducted a consultative psychological examination on February 2, 2023. (Tr. 831-42).

The ALJ addressed Dr. Evans examination report when assessing Plaintiff's RFC, and accurately observed that, for the most part, Dr. Evans did not offer any medical "opinions" concerning Plaintiff's mental functioning. (Tr. 31). Dr. Evans summarized Plaintiff's reported history, noting for example that Plaintiff described having memory problems and increased depression since experiencing a stroke in December 2021. (Tr. 832-834). Dr. Evans performed memory testing indicating the Plaintiff's memory functioning fell between the low average and average ranges, and stated that Plaintiff understood, remembered and carried out simple instructions during the evaluation. (Tr. 836, 838). Dr. Evans commented that Plaintiff "generally attended, concentrated, and persisted during the 162-minute examination," and "presented as a generally cooperative adult who was frustrated by testing and who viewed herself as performing poorly on tasks." (Tr. 837). Dr. Evans wrote that Plaintiff "reported interpersonal difficulties after her stroke, primarily related to irritability," not wanting to be in social situations, and not getting along with people anymore. (Tr. 838). Dr. Evans did not, however, identify any specific functional mental limitations relating to memory, concentration, or Plaintiff's ability to interact with others.

In response to a question asking her to describe Plaintiff's ability to tolerate work stress, Dr. Evans wrote that Plaintiff's "depression, combined with her trauma-related symptoms, makes it difficult for her to attend to and tolerate additional life stress." (Tr. 839). The ALJ interpreted this statement as an opinion that Plaintiff would do best in a low stress environment. (Tr. 31). The ALJ considered this opinion but reasonably found that Plaintiff's "independent daily activities, including some work as a UPS driver during the holiday season" was not consistent with finding that Plaintiff required a low stress environment. (Tr. 31, 754). The ALJ properly evaluated the supportability and consistency of Dr. Evans' opinion in formulating the RFC.

**B. Mild Mental Limitations**

The ALJ found at step two that Plaintiff had medically determinable mental impairments of depressive disorder, anxiety disorder, and a neurocognitive disorder, but determined the impairments were not severe because, considered singly and in combination, they did "not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (Tr. 25). Specifically, the ALJ found that Plaintiff had no limitations in understanding, remembering, and applying information and no limitation in concentrating, persisting, and maintaining pace, but had mild limitations in interacting with others and adapting or managing oneself, and (Tr. 25-26). Plaintiff argues the ALJ failed to address

these mild limitations when formulating the RFC later in the sequential evaluation process.

The ALJ is required to assess a claimant's RFC based on "*all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original). In doing so, the ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5; *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Hutton v. Astrue,* 491 Fed. Appx 850, 850-51 (9th Cir. 2012) (unpublished) (although the ALJ found at step two that the claimant's PTSD was not severe because it caused only "mild" limitations in concentration, persistence, or pace, the ALJ was required to consider those mild mental limitations in the RFC analysis).

Following *Hutton*, district courts in the Ninth Circuit have generally held that while an ALJ is not necessarily required to incorporate "mild" mental limitations identified at step two into the RFC, the ALJ must consider those limitations when formulating the RFC later in the sequential evaluation process. *See e.g. Tammy W. v. Comm'r of Soc. Sec.*, 787 F.Supp.3d 1175, 1183 (W.D. Wash. 2025) ("This [c]ourt and others have held that an ALJ is not required to impose any restriction in the RFC based on a 'mild' mental limitation but does need to at least consider the issue" and provide an adequate explanation for not

including the limitation in the RFC); *McIntosh v. Berryhill*, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018) ("In this case, unlike *Hutton*, the ALJ expressly considered Plaintiff's mental impairment in formulating his residual functional capacity … 'Because Plaintiff's mental impairment was not severe and did not cause any significant impairment, the ALJ was not required to include it in Plaintiff's RFC.'" (quoting *Banks v. Berryhill*, 2018 WL 1631277, at *4 (C.D. Cal. Apr. 2, 2018)); *Medlock v. Colvin*, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) ("Consideration of 'the limiting effects of all impairments' does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work.").

Some courts have held that a statement by the ALJ that the RFC reflects the degree of limitation found in the paragraph B mental function analysis is sufficient to satisfy the Social Security regulations. *See e.g. Wendy C. v. Comm'r of Soc. Sec.*, 2020 WL 3287286, at *6 (W.D. Wash. June 18, 2020) (collecting cases). But several other courts—including in this district—have held that such a boilerplate statement is not enough to demonstrate that the ALJ considered step two findings of mild mental limitations when assessing the RFC. *Napier v. Comm'r of Soc. Sec.*, 2026 WL 821469, at *9 (D. Mont. Mar. 23, 2026). "[H]aving found the existence of an impairment that mildly limits a claimant in some way, the ALJ does have to

show his work as to why that limitation has no bearing on the RFC." *Napier*, 2026 WL 8211469, at *9 (quoting *Diane v. Kijakazi*, 2023 WL 7301969, at *5 (C.D. Cal. Nov. 6, 2023)).

Here, the ALJ evaluated the paragraph B criteria at step two and found that Plaintiff's mental impairments were not severe because they caused no more than mild limitations in Plaintiff's ability to perform basic mental work activities. (Tr. 25). In finding that that Plaintiff had mild limitations in interacting with others, the the ALJ noted that Plaintiff reported interpersonal difficulties after a stroke, primarily irritability, not wanting to be in social situations, and not getting along with others. (Tr. 25, citing Tr. 838). Citing medical records reflecting that Plaintiff exhibited normal mood and affect during a January 2022 emergency room visit and conversed appropriately with providers during a December 2021 emergency room visit, however, the ALJ found that Plaintiff had only mild limitations in this area. (Tr. 25, citing Tr. 743, 756). In finding that Plaintiff also had mild limitations in adapting or managing oneself, the ALJ noted that Plaintiff's intelligence was measured in the low-average to average range and found based on evidence that Plaintiff lived independently with her husband and could babysit her three-year-old grandchild that she had mild limitations in adapting or managing oneself. (Tr. 26, citing Tr. 836).

At the end of the step two analysis, the ALJ correctly stated that the limitations identified using the paragraph B criteria are not a residual functional capacity, and the mental residual functional capacity assessment used at steps 4 and 5 requires a more detailed assessment. (Tr. 26). The ALJ then made the boilerplate statement that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 26).

In addition to this boilerplate language, however, the ALJ expressly considered Plaintiff's mental impairments again later in the sequential evaluation process when formulating the RFC. (Tr. 30-31). Specifically, as addressed above, the ALJ considered the prior administrative findings of state agency physicians Dr. Sheppard and Dr. Berkowitz. (Tr. 30-31, citing Tr. 132-144, 147-160, 161-170, 172-181). Dr. Sheppard and Dr. Berkowitz both found that Plaintiff had no more than mild mental limitations in any of the paragraph B functional areas and concluded that her mental impairments were not severe.[2] (Tr. 136, 151, 165, 175).

---

[2] Dr. Berkowitz also found that Plaintiff had mild limitations in concentration, persistence, or maintaining pace. (Tr. 165, 175). To the extent Plaintiff argues the ALJ erred in finding that she had no limitations in this area, review of the ALJ's decision shows otherwise. The ALJ considered Dr. Berkowitz's and Dr. Sheppard's opinions when formulating the RFC. The ALJ also considered Dr. Evans's opinion (Tr. 31), which reflected that that Plaintiff generally attended, concentrated, and persisted during the 162-minute exam (Tr. 837). The ALJ considered Plaintiff's non-severe mental impairments when formulating the RFC and Plaintiff has not shown that the ALJ erred by not incorporating any specific

The ALJ considered both opinions persuasive and reasonably found that the mild mental limitations identified at step two did not translate into specific mental limitations in the RFC. (Tr. 30). The ALJ also considered the opinion of consultative examining physician Dr. Evans when formulating Plaintiff's RFC. As addressed above, the ALJ properly evaluated Dr. Evans's opinion and reasonably found that it did not warrant specific mental functional limitations in the RFC.

By definition, a non-severe impairment is one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922. While the ALJ is required to consider all medically determinable impairments when assessing a claimant's RFC, including those that are non-severe, there is no requirement that mild limitations be incorporated in the RFC. *See e.g. Woods v. Kijakazi*¸, 32 F.4th 785, 794 (9th Cir. 2022); *Ball v. Colvin*, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2025) (recognizing that mild mental impairments "by definition do not have more than a minimal limitation on Plaintiff's ability to do basic work activities…which translates in most cases into no functional limitations"). Here, the ALJ expressly considered Plaintiff's mental impairments in assessing the RFC and reasonably decided based on substantial evidence of record not to include any mental limitations in the RFC finding.

---

limitations in concentration, persistence, or maintaining pace.

The ALJ is responsible for weighing the medical opinions in the record and resolving any conflicts in the medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Even if the record could support a different result, the Court must affirm the ALJ's findings if they are supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[W]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). Even if the evidence in this case could be subject to more than one rational interpretation, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence.

## IV. Conclusion

For the reasons discussed above, the Court finds the ALJ's decision is supported by substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 29th day of September, 2026.

Kathleen L. DeSoto
United States Magistrate Judge